Mr. Chief Justice Shepard
delivered the opinion of the-Court:
1. A preliminary contention on behalf of the appellants is-that the act, being remedial, and not penal, should be liberally construed. This contention seems to be of little or no practical importance in the present case, as the substantial question, presented is one of power, rather than construction. Without: discussion, therefore, it may be conceded that the act, while it contains penal provisions without which it could not be-enforced, was enacted to remedy the great mischief resulting' from the unrestricted sale of adulterated drugs and articles of food, and ought to be given, where possible, a construction that-will effect the general legislative intention.
2. The substantial questions for determination arise upon two propositions that have been submitted in support of the’ contention of error in the dismissal of the bill on the exceptions-stated. The first of these is that the packages of the drugs-are misbranded, because the labels fail to recite that acetphenitidin contained therein is a derivative of acetanilid.
It seems clear that this omission is not in express violation of" the requirement of sec. 8 of the act, for the reason that the-label states the true name of the drug, acetphenitidin, which, though not one of those specifically named in the section, is. a derivative of one of them, acetanilid.
Now, while persons skilled in chemistry and pharmacy would known that acetphenitidin is a derivative of acetanilid, it is. certain that the average purchaser and user of drugs would not. For this reason, no doubt, the commission of expert chemists, whose recommendations were adopted by the three Secretaries, suggested the regulation requiring the label of a derivative of one of the drugs specified in sec. 8 to show not only the tradename of the same, but also the name of the substance of which it is a derivative. It is well settled that where an act of Congress has for its object the raising of revenue, the administration of the affairs committed to an executive department, as of the public lands and the like, or the execution of *351 the power over commerce, matters of detail looking to the-promulgation of regulations for carrying the law into effect, as, for example providing for the proceedings thereunder, the fixing of standards, brands, and labels, or the ascertainment of necessary facts upon which the law may operate, may be expressly delegated to an executive officer. In such instances Congress legislates on the subject as far as is reasonably practicable, and from the recognized necessities of the case is compelled to leave to executive officers the duty of bringing about the result pointed out by the statute. United States v. Bailey, 9 Pet. 238, 9 L. ed. 113; Caha v. United States, 152 U. S. 211, 38 L. ed. 415, 14 Sup. Ct. Rep. 513; Re Kollock, 165 U. S. 526, 41 L. ed. 813, 17 Sup. Ct. Rep. 444; Marshall Field & Co. v. Clark, 143 U. S. 649, 36 L. ed. 294, 12 Sup. Ct. Rep. 495; Union Bridge Co. v. United States, 204 U. S. 364, 51 L. ed. 523, 27 Sup. Ct. Rep. 367; St. Louis, I. M. & S. R. Co. v. Taylor, 210 U. S. 281, 52 L. ed. 1061, 28 Sup. Ct. Rep. 616; Bong v. Alfred S. Campbell Art Co. 214 U. S. 236, 53 L. ed. 979, 29 Sup. Ct. Rep. 628, 16 A. & E. Ann. Cas. 1126; see also Coopersville Co-op. Creamery Co. v. Lemon, 89 C. C. A. 595, 163 Fed. 145; Prather v. United States, 9 App. D. C. 82; Kollock v. United States, 9 App. D. C. 420.
On the other hand, it is equally well settled that the power conferred to make regulations for carrying the law into effect must be exercised within the powers delegated, that is to say, confined to details for regulating the mode of proceeding to carry into effect the law as it has been enacted by Congress,. It cannot be extended to amending or adding to the requirements of the act itself. Morrill v. Jones, 106 U. S. 466, 27 L. ed. 267, 1 Sup. Ct. Rep. 423; United States v. Symonds, 120 U. S. 46, 30 L. ed. 557, 7 Sup. Ct. Rep. 411 ; United States v. Eaton, 144 U. S. 677, 36 L. ed. 591, 12 Sup. Ct. Rep. 764; Williamson v. United States, 207 U. S. 425, 52 L. ed. 278, 28 Sup. Ct. Rep. 163.
The decisions cited mark the general boundary line between the powers that may be delegated to administrative officers, and *352 those that may not be. It remains to determine on which side •of that line the power claimed in the present case falls.
It must be borne in mind that the food and drugs act [34 Stat. at L. 768, chap. 3915, U. S. Comp. Stat. Supp. 1909, p. 1187] does not confer upon executive officers the power to prescribe the forms of brands and labels upon drugs, as was •done by the oleomargarin act, that was considered in Kolloch’s Case, supra. The only power conferred is that in sec. 3, which provides that the three Secretaries named “shall make uniform rules and regulations for carrying out the provisions of this ;act, including the collection and examination of specimens of foods and drugs,” etc.
Sec. 8 declares when an article shall be deemed to be misbranded: “First: If it be an imitation of, or offered for sale under the name of, another article. Second: * * * If [among other things] the package fail to bear a statement on the label of the quantity or proportion of any alcohol, morphin, -opium, cocain, heroin, alpha or beta eucain, chloroform, cannabis indica, chloral hydrate, or acetanilid, or any derivative ■or preparation of any such substances contained therein.”
In so far as the regulation designates the several derivatives ■of the drugs enumerated in sec. 8, and the preparations containing the same, we are of the opinion that it is within the power conferred in sec. 3 to make uniform rules and regulations ■for carrying out the provisions of the act. It was not reasonably practicable for Congress to ascertain and declare these several derivatives and preparations which might then have existed, much less to anticipate those which might later come into existence and use. Having declared that the quantity or proportion of the several derivatives of the named drugs ■shall be stated on the labels, the ascertainment of such derivatives was a matter of detail properly confided to the executive officers in carrying out the provisions of the law. The regulation having named acetphenitidin as a derivative of acetanilid, the manufacturer complied therewith to the extent of naming the proportion of said derivative contained in the antikamnia tablets, but did not comply with the requirement of the same *353 that it should also recite that it was, in fact, a derivative of acetanilid. The last requirement was in our opinion an amend•ment of, or an addition to, the act itself, and therefore beyond the powers of the executive authority. Congress reserved to itself the statement of the contents of the labels, and did not require that when a drug was a derivative merely, the name of the drug from whence derived should also be recited. Had it intended that this should be done, it would have so declared distinctly. In this respect the case is clearly differentiated from Re Kollock, supra, and comes within the rule governing the second class of cases before recited, including United States v. Eaton, 144 U. S. 677-688, 26 L. ed. 591-594, 12 Sup. Ct. Rep. 764; and Williamson v. United States, 207 U. S. 425—462, 52 L. ed. 278-297, 28 Sup. Ct. Rep. 163. In the case last cited, the question was whether a false oath made in final proof required by a regulation of the Commissioner of the Land Office constituted perjury. The statute made certain requirements in regard to preliminary proofs, and reiterated some of them in the section relating to final proofs, but omitted the one which, by the regulations made by the Commissioner under the power conferred by the act to give effect to its provisions, was required. It was held that the power to adopt rules and regulations for the enforcement of the act could not be construed to warrant one that was in fact an addition to the act.
Since the submission of this case, the Supreme Court of the United States has rendered a decision, the opinion in which, delivered by Mr. Justice Lamar, clearly draws the line between those powers which may be delegated by Congress to an executive officer, and those which may not. United States v. Grimaud, 1911, 220 U. S. 506, 55 L. ed. —, 31 Sup. Ct. Rep. 480. That was an indictment for violating a regulation of the Secretary of Agriculture relating to the use and occupancy of public forest reservations. It was said that in the nature of things it was impracticable for Congress to pro-' vide regulations for the various and varying details of the management of the forest reservations^ and that it was within its *354 power to authorize the Secretary to make such regulations as would secure the objects of such reservation, namely, to regulate the use and occupancy and preserve the forests from destruction. Having so done, it declared that “any violation of the provisions of this act or such rules and regulations shall be punished as provided in sec. 5388, Rev. Stat. U. S. Comp. Stat. 1901, p. 3649, as amended.” The violation of such reasonable rules and regulations is “made a crime, not by the Secretary, but by Congress. The statute, not the Secretary, fixes the penalty.” It is this feature of the act that differentiated the case from Williamson v. United States, supra, and other cases cited, which, in our opinion, furnish the rule of determination for the case at bar. Congress here prescribed what the labels should contain, and conferred no power upon the Secretaries to make a regulation adding anything thereto.
3. The second proposition is this in substance: The statement on the label that the drug “contains no acetanilid” is false and misleading, and constitutes misbranding, within meaning of the act. The libel does not expressly charge that aeetphenitidin contains acetanilid. If it did, there would be no doubt of the soundness of the proposition, for the exceptions necessarily admit every fact plainly alleged. But it contains-no such allegation. It charges that the labels are false and misleading, “for the reason that each and all of said labels; bear the statement that no acetanilid is contained therein, and. that said statement imports and signifies that there is no quantity or proportion of any derivative of acetanilid contained in said drug.” It is argued in support of the proposition thatacetphenitidin necessarily contains some appreciable quantity or proportion of the latter drug; and it is further argued that this is a matter of common knowledge of which the court may take notice without proof. We cannot agree that it is a matter of common knowledge that a chemical derivative necessarily contains, or is of the same nature as, the substance whence it may be derived. It was stated on the argument, without dissent, that very many well-known substances, including acetanilid, are derivatives of benzin or benzol. Some of these deriva *355 tives are nocuous, others entirely harmless. While, therefore, acetphenitidin is a chemical derivative of acetanilid, and may be derived therefrom in practice, it is in a general sense a derivative of benzin or benzol, and may, for all that we know, be derived therefrom in actual practice for commercial use. When one wishes to ascertain the common meaning or signification of a word, resort is ordinarily had to the accredited dictionaries of the language. Murray’s English Dictionary defines a chemical derivative thus: “A compound obtained from another, e. g., by partial replacement.” The definition of the Standard Dictionary is substantially the same. In the latest edition of Webster’s International Dictionary the following definition is given: “A substance so related to another substance by modification or partial substitution as to be regarded as derived from it, even when not obtainable from it in practice.” These definitions do not carry us very far. About as far as common knowledge goes is that chemical changes occur in substances through the substraction or the addition of some particular element. Sometimes the mingling of several substances having chemical affinities, but respectively innocuous, may produce a deadly poison. And sometimes the substraction of an element from a poisonous substance may produce another that is perfectly harmless. The principles that direct these combinations and control the transformations effected are beyond common knowledge. They can only become known through the special study of the science of chemistry.
Whether, then, the addition or substraction of elements, through which acetphenitidin may, in theory or in practice, be derived from acetanilid, produces such a chemical change of' substance that it may be truly said to contain no acetanilid, or' produces a substance which still contains an appreciable quantity or proportion of the same, presents a question of fact, which, in our opinion, must be determined on the evidence of' witnesses skilled in the science of chemistry.
To authorize the introduction of evidence an issue must be1 raised in the pleadings.
As before pointed out, the libel does not charge that the- *356 statement that the preparation contains no acetanilid is false by reason of the fact that acetphenitidin does contain acetanilid. It carefully confines itself to the allegation that the statement is false because it does not recite that there is no quantity or proportion of any derivative of acetanilid contained therein. This clearly limits the charge of misbranding to the failure to state that acetphenitidin is a derivative of acetanilid. This is but another form of the complaint that the regulation has been violated. It does not raise an issue of fact as to whether acetphenitidin actually contains a perceptible quantity of acetanilid.
In accordance with these conclusions, the judgment will be affirmed. Affirmed.