**TODAMERICA MUSICA, Ltda., v. RADIO CORPORATION OF AMERICA et al.**

No. 31, Docket 21036.

United States Court of Appeals Second Circuit.

Dec. 6, 1948.

Jack J. Katz, of New York City, for appellant.

Arthur L. Fishbein and Arthur E. Garmaize, both of New York City (Maxwell Okun, of New York City, on the brief), for appellees.

Before L. HAND, AUGUSTUS N. HAND and CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The amended complaint alleged that Irmaos Vitale, a partnership of the United States of Brazil, copyrighted a musical composition "Tico Tico No Fuba," which had been composed by a Brazilian named Abreu, in accordance with the laws of Brazil and in accordance with the requirements of the Buenos Aires Convention of 1910 by publishing the composition together with a statement of reservation of property rights and thereby became the sole owner and proprietor of the musical composition and of all rights thereunder. On June 1, 1931, Vitale assigned to Columbia Brazil Phonograph Company, Inc., in Brazil, the sole and exclusive license of the mechanical reproduction rights in the copyright for all countries in the world. On or about January 9, 1934, Columbia transferred all its assets including its rights under the agreement with Vitale to Byington & Co., a Brazilian partnership. On July 9, 1945, Byington & Co. assigned to the plaintiff, a Brazilian corporation, all of its rights

acquired through the agreement between Vitale and Columbia, whereby the plaintiff became the exclusive owner of the mechanical reproduction rights in the composition and of all causes of action that its predecessors may have had therein.

The amended complaint further alleged that after the transfer to Columbia, Vitale assigned to the defendant Peer International Corporation, organized under the laws of New York, all rights in the musical composition not previously transferred to Columbia, and that thereafter and about the year 1943, Peer secured an American copyright on the musical composition by publishing the same with notice of copyright and filing it with the Register of Copyrights in Washington, D. C. Peer and Southern Music Publishing Co., Inc., are charged in the amended complaint with licensing the right to manufacture and publicly perform phonograph records of the musical composition without the consent of the plaintiff or a license from it or its predecessors and the other defendants with manufacturing, selling and publicly performing phonograph records without the consent or license of the plaintiff or its predecessors.

Infringement by all the defendants is charged upon the theory that the plaintiff is an owner of mechanical reproduction rights in the musical composition and as such owner can sue the defendants as infringers in the United States courts. Upon the foregoing facts the District Court, on the motion of the defendants' attorney, dismissed the amended complaint with costs and the allowance of an attorney's fee with a judgment to this effect. The plaintiff has appealed. We think that the judgment was right and should be affirmed.

The validity of the above theory depends upon the proper interpretation of the provisions of the United States Copyright Act which so far as pertinent are as follows:

"Section 1. Exclusive rights as to copyrighted works. Any person entitled thereto, upon complying with the provisions of this title, shall have the exclusive right:

    \*    \*    \*    \*    \*    \*

"(e) To perform the copyrighted work publicly for profit if it be a musical composition; and for the purpose of public performance for profit, and for the purposes set forth in subsection (a) hereof, to make any arrangement or setting of it or of the melody of it in any system of notation or any form of record in which the thought of an author may be recorded and from which it may be read or reproduced: Provided, That the provisions of this title, so far as they secure copyright controlling the parts of instruments serving to reproduce mechanically the musical work, shall include only compositions published and copyrighted after July 1, 1909, and shall not include the works of a foreign author or composer unless the foreign state or nation of which such author or composer is a citizen or subject grants, either by treaty, convention, agreement, or law, to citizens of the United States similar rights. \* \* \*"

"§ 8. Authors or proprietors, entitled, aliens. The author or proprietor of any work made the subject of copyright by this title, or his executors, administrators, or assigns, shall have copyright for such work under the conditions and for the terms specified in this title. The copyright secured by this title shall extend to the work of an author or proprietor who is a citizen or subject of a foreign State or nation only:

"(a) When an alien author or proprietor shall be domiciled within the United States at the time of the first publication of his work; or

"(b) When the foreign State or nation of which such author or proprietor is a citizen or subject grants, either by treaty, convention, agreement, or law, to citizens of the United States the benefit of copyright on substantially the same basis as to its own citizens, or copyright protection, substantially equal to the protection secured to such foreign author under this title or by treaty; or when such foreign State or nation is a party to an international agreement which provides for reciprocity in the granting of copyright, by the terms of which agreement the United States may, at its pleasure, become a party thereto.

"The existence of the reciprocal conditions aforesaid shall be determined by the President of the United States, by procla-

mation made from time to time, as the purposes of this title may require."[1]

The defendants contend that a specific Presidential Proclamation determining the existence of the reciprocal conditions referred to in Section 1(e) of the Copyright Act is essential before a musical composition of a non-domiciled foreign author will be protected against mechanical reproduction in the United States. The correctness of this contention is supported by the Opinion of the Attorney General reported in Volume 29 Official Opinions of the Attorneys General, page 64. It was there said in respect to rights of alien authors and composers under our Copyright Law, at pages 68–69:

" * * * Every reason which prompted the insertion of the clause in section 8 relating to the proclamation by the President, applies equally to the proviso in section 1(e). Without the specification of some method by which it may be determined whether the laws of a foreign country comply with this particular condition, the general public could possess no adequate knowledge as to whether a copyright of a musical composition carried with it the protection of the right declared therein, and the proof of such right in actions for infringement would often be uncertain and difficult to obtain.

"There can be but little doubt that Congress intended that the requirement that the existence of 'the reciprocal conditions aforesaid' shall be determined by the President of the United States, should apply to the reciprocal requirements specified in section 1(e), and that it was not there expressed because it was assumed that the language of the concluding clause of section 8 implied that all reciprocal conditions upon which the right of foreign authors or composers depend, should be determined and proclaimed by the President."

Judge Coxe concurred in the foregoing reasoning of the Attorney General in an opinion in Portuondo v. Columbia Phonograph Co., under date of May 13, 1937, filed in the United States District Court for the Southern District of New York, 81 F. Supp. 355. He there held that: "Under Sections 1(e) and 8(b) of the Copyright Law, U.S.C.A., title 17, §§ 1(e), 8(b), protection against mechanical reproduction is denied unless substantially similar protection is accorded to United States citizens;" and said that "it is expressly provided that the existence of these reciprocal conditions shall be determined by the President 'by proclamation made from time to time.' * * * In the absence of such a proclamation, the plaintiff cannot avail himself of our copyright laws; * * *"

We can see no reason why the opinion of the Attorney General, concurred in by Judge Coxe, is not entirely sound. Section 8 required a Presidential Proclamation as a basis for the recognition of reciprocal rights in copyright publications. In Bong v. Alfred S. Campbell Art Co., 214 U.S. 236, 29 S.Ct. 628, 53 L.Ed. 979, 16 Ann. Cas. 1126, the Supreme Court decided a Presidential Proclamation to be necessary in the case of reciprocal rights provided for in Section 8. It is impossible to see why the same reasons of policy should not govern reproduction rights under Section 1(e) and require a Presidential Proclamation for recognition of that portion of the total bundle of rights belonging to the owner of a copyright.

Reproduction rights were included in the Copyright Law by Section 1(e) because of the prior decision of the Supreme Court in White-Smith Music Publishing Co. v. Apollo Co., 209 U.S. 1, 28 S.Ct. 319, 52 L.Ed. 655, which had held that those rights were not entitled to protection under the law as it existed prior to the enactment of Section 1(e). Inasmuch as Section 1(e) first provided for the protection of reproduction rights, our primary question is whether the provisions of Section 8 requiring as a prerequisite for general copyright protection a Presidential Proclamation should be so construed as to exclude mechanical reproduction rights merely because Section 1(e), in adding such rights to those embodied in Section 8 as construed by

---

[1] The Copyright Act was reenacted by Congress on July 30, 1947, 61 Stat. 652. The provisions of Sections 1(e) and 8 quoted in the text have not been changed in any way, except that Section 8 has been renumbered as Section 9.

the Supreme Court, did not repeat the requirement of a Presidential Proclamation. It is to be observed that the right of a copyright owner to protect reproduction rights was at first denied by the Supreme Court and then only granted by Congress with important restrictions as to the extent of his monopoly in Section 1(e) by the addition of a provision for compulsory licenses and a maximum royalty. In such circumstances it seems to us wholly improbable that the general requirement of a Presidential Proclamation which had always been embodied in Section 8 was not to apply to reproduction rights. We consequently hold that a Presidential Proclamation is necessary for the enforcement of such rights by the owner of a foreign copyright who is not domiciled in the United States. This holding would seem to be especially strengthened by the reenactment by Congress of Sections 1(e) and 8 in 1947 without any change of language where the earlier sections had received the administrative and judicial interpretation we have pointed out.

The question remaining for consideration is whether this requirement has been satisfied by the Presidential Proclamation of the Buenos Aires Convention of 1910, since no other proclamation has been brought to our attention. Articles 1, 2, 3, 4, and 6 of the Buenos Aires Convention of 1910, to which the Brazilian Government was a party, are set forth in the margin.[2]

After ratification of the Buenos Aires Convention by our Senate and the other signatory countries, the President of the United States issued a Proclamation stating that he had "caused the said Convention to be made public, to the end that the same and every article and clause thereof may be observed and fulfilled with good faith by the United States and the citizens thereof." 38 Stat. 1785, 1798. It is to be noticed that neither in the Proclamation nor in the Convention were reproduction rights specifically mentioned. If they were included at all it must be because of the language of Article 2, in which the term "Literary and Artistic Works" is said to include "all productions that can be published by any means of impression or reproduction," or the language of Article 4 which defines copyright as including "the exclusive power of * * * reproducing it in any form * * *."

The ordinary rule of ejusdem generis would seem to indicate that the broad language quoted from Articles 2 and 4 is limited by the specific subjects of copyright listed in the clauses which precede that language. This interpretation is also strengthened by the decision of the Supreme Court in White-Smith Music Co. v. Apollo Co., 209 U.S. 1, 28 S.Ct. 319, 52 L.Ed. 655, which held that the earlier, Copyright Act, though containing broad terms, did not include mechanical reproduction rights. The decision really rested on what the

---

2 "Article 1. The signatory States acknowledge and protect the rights of Literary and Artistic Property in conformity with the stipulations of the present Convention.

"Article 2. In the expression 'Literary and Artistic Works' are included books, writings, pamphlets of all kinds, whatever may be the subject of which they treat, and whatever the number of their pages; dramatic or dramatico-musical works; choreographic and musical compositions, with or without words; drawings, paintings, sculpture, engravings; photographic works; astronomical or geographical globes; plans, sketches or plastic works relating to geography, geology or topography, architecture or any other science; and, finally, all productions that can be published by any means of impression or reproduction.

"Article 3. The acknowledgment of a copyright obtained in one State, in conformity with its laws, shall produce its effects of full right, in all the other States without the necessity of complying with any other formality, provided always there shall appear in the work a statement that indicates the reservation of the property right.

"Article 4. The copyright of a literary or artistic work, includes for its author or assigns the exclusive power of disposing of the same, of publishing, assigning, translating or authorizing its translation and reproducing it in any form whether wholly or in part."

"Article 6. The authors or their assigns, citizens or domiciled foreigners, shall enjoy in the signatory countries the rights that the respective laws accord, without those rights being allowed to exceed the term of protection granted in the country of origin."

court deemed to be the general understanding both in this country and abroad as to the meaning of the word "copies," which was thought to limit the incidence of the Act to a tangible "duplication of the original" work. Mr. Justice Holmes felt constrained by this general understanding to concur, though he would otherwise have regarded the language of the Act as sufficient to cover mechanical reproduction rights.

In actual practice, the Presidential Proclamations have apparently specified reproduction rights in all cases where they were to be included and have even particularly excluded them in many proclamations where rights under Section 8 were conferred. They were so included in the Proclamation of President Franklin D. Roosevelt with respect to the Argentine Republic, No. 2095, 49 Stat. 3413. They were excluded by the Proclamation of President Taft with respect to Sweden, 37 Stat. 1682. See generally 37 C.F.R. §§ 202.1–202.5, appearing in 17 U.S.C.A. following section 9. We can discover no reason for this course if reproduction rights were sufficiently protected by the use of such general language as is found in the Buenos Aires Convention.

We may add that the Mexico City Convention of 1902 between the United States and various Latin American Republics, including Costa Rica, contained substantially the same language as Articles 2 and 4 of the Buenos Aires Convention. President Theodore Roosevelt made public proclamation of the Mexico City Convention in 1908, 35 Stat. 1934, but in 1910 President Taft, apparently to dispel any claim to reproduction rights under the earlier proclamation, issued a proclamation whereby he excluded reproduction rights from Costa Ricans pending further inquiry, 36 Stat. 2685.

There was an attempt to revise the Buenos Aires Convention at Havana in 1928 so as to include mechanical reproduction rights by specific language. A similar effort was made in the Washington Convention of 1946. Neither has ever been ratified by the Senate, nor proclaimed by the President. These attempts to obtain reproduction rights through revised Conventions indicate that it has generally been believed that such rights were not covered by the Buenos Aires Convention of 1910.

It is argued on behalf of the plaintiff that Articles 3 and 6 of the Buenos Aires Convention have conferred as a matter of substantive law mechanical reproduction rights upon authors of foreign signatory countries. We think this is not so and that Article 3 only dispenses with certain formal requisites, such as registration in the foreign country if the substantive rights have otherwise been conferred. Article 6 does no more than subject the foreign copyright owner to the law of the forum and looking to that law, in this case to the law of the United States, we find for reasons already given that it requires a proclamation the language of which specifically refers to mechanical reproduction rights.

In view of the above considerations we hold that the plaintiff does not possess under our laws the mechanical reproduction rights which it seeks to enforce in this action. Perhaps we should add that a Convention which in terms covered mechanical reproduction rights, as the Buenos Aires Convention did not, might be sufficiently proclaimed by the President even though his Proclamation was in general language which did not specify reproduction rights under Section 1(e), but it is unnecessary to deal with a situation which does not exist in the case at bar, where such rights were neither mentioned in the Convention nor in the Proclamation.

For the foregoing reasons the judgment of the District Court is affirmed.