**HASBRO BRADLEY, INC.,**
**Plaintiff-Appellee,**

v.

**SPARKLE TOYS, INC.,**
**Defendant-Appellant.**

**No. 202, Docket 85–7302.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 30, 1985.

Decided Dec. 17, 1985.

Marvin N. Gordon, New York City (Hopgood, Calimafde, Kalil, Blaustein & Judlowe, New York City, of counsel), for defendant-appellant.

Anthony M. Radice, New York City (Kim J. Landsman, Parker Auspitz Neesemann & Delehanty, New York City, of counsel), for plaintiff-appellee.

Before FRIENDLY, MANSFIELD and WINTER, Circuit Judges.

FRIENDLY, Circuit Judge:

The companies involved in this copyright case in the District Court for the Southern District of New York are Takara Co., Ltd. ("Takara"), a Japanese company that designed the toys here in question; plaintiff Hasbro Bradley, Inc. ("Hasbro"), a large American toy manufacturer and seller that acquired Takara's rights to United States copyrights for the toys; and defendant Sparkle Toys, Inc. ("Sparkle"), a smaller American toy manufacturer and seller that copied the toys in Asia from models manufactured by Takara which did not carry the copyright notice required by § 401 of the Copyright Act of 1976 (the "Act"), 17 U.S.C. § 101 et seq.,[1] and by Article III(1) of the Revised Universal Copyright Convention (U.C.C.), 25 U.S.T. 1341 (1971), to which the United States and Japan are parties. The appeal, by Sparkle, is from an order of Judge Broderick entered April 29, 1985, granting Hasbro a preliminary injunction prohibiting Sparkle from "distributing, selling, marketing, promoting, advertising, imitating or exploiting, in this country, its toys, formerly denoted 'Trans Robot,' which are in violation of plaintiff's registered copyrights in the sculptural embodiments of its 'Topspin' and 'Twin Twist' toys."

"Topspin" and "Twin Twist" (the "toys") are part of Hasbro's "The Transformers" series of changeable robotic action figures. The sculptural expressions of the toys are original designs of Takara, which manufactures "The Transformers" for Hasbro. Takara authored the designs in the summer of 1983 and by the end of November had completed molds for manufacturing the toys. These molds did not contain a copyright notice. Takara avers that the omis-

sion was due to the facts that Japanese law does not recognize copyright in toy products and that Takara was unaware that American law does recognize copyright in such works but requires notice, even on copies of the work distributed outside the United States, for copyright protection to be claimed inside the United States. Production of the unmarked toys began in December 1983 and ended in February 1984. Between January and March, approximately 213,000 of the unmarked toys were sold; thereafter, sales were minor and were made only to remove inventory. Whether the unmarked toys were sold only in Asia or some of them were sold as well in the United States is in dispute.

Hasbro was shown the toys by Takara in June 1984 and decided to adopt them into "The Transformers" series. In the course of modifying the toys to meet Hasbro's specifications, Takara designed new molds that contained a copyright notice; at the same time, it added a copyright notice to its old molds. Takara avers that after August 1984 no toys using molds that did not contain a copyright notice were manufactured for sale anywhere in the world. Hasbro has widely distributed the toys in the United States, beginning in January 1985. Sparkle does not dispute that all of the toys sold in this country by Hasbro have born copyright notice.

Sometime in June 1984, Takara orally granted Hasbro the exclusive right to import and sell the toys in the United States and assigned to Hasbro the United States copyrights in the designs of the toys, including the right to apply for copyright registration. A written confirmation of assignment was executed as of November 12, 1984. Hasbro applied to register copyrights in the United States in both sculptural expressions of each toy on November 29, 1984, listing Takara as the "author" and itself as the "copyright claimant" by virtue of the assignment from Takara. Certificates of registration were granted effective December 3, 1984.

---

1. All statutory citations hereafter are to 17 U.S.C. unless otherwise indicated.

## Discussion

■ The settled law of this circuit is that a preliminary injunction may be granted only upon a showing of "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Jackson Dairy, Inc. v. H.P. Hood & Sons,* 596 F.2d 70, 72 (2 Cir.1979); *see, e.g., Mattel, Inc. v. Azrak-Hamway International, Inc.,* 724 F.2d 357, 359 (2 Cir.1983). Irreparable harm may ordinarily be presumed from copyright infringement. *Wainwright Securities, Inc. v. Wall Street Transcript Corp.,* 558 F.2d 91, 94 (2 Cir.1977), *cert. denied* 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 759 (1978); *accord Apple Computer, Inc. v. Formula International, Inc.,* 725 F.2d 521, 525 (9 Cir.1984); *Apple Computer, Inc. v. Franklin Computer Corp.,* 714 F.2d 1240, 1254 (3 Cir.1983), *cert. dismissed,* 464 U.S. 1033, 104 S.Ct. 690, 79 L.Ed.2d 158 (1984); *Atari, Inc. v. North American Philips Consumer Electronics Corp.,* 672 F.2d 607, 620 (7 Cir.), *cert. denied,* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 145 (1982). A prima facie case of copyright infringement consists of proof that the plaintiff owns a valid copyright and the defendant has engaged in unauthorized copying. *Novelty Textile Mills, Inc. v. Joan Fabrics Corp.,* 558 F.2d 1090, 1092 (2 Cir.1977); 3 *Nimmer on Copyright* § 13.01 (1985) [hereafter *Nimmer*]. Since Sparkle admits to unauthorized copying, the only issue before us in reviewing the grant of the preliminary injunction is whether Hasbro's copyrights for the toys are valid. Under § 410(c) of the Act, Hasbro's certificates of copyright registration are prima facie evidence that the copy-

rights are valid,[2] shifting to Sparkle the burden of proving the contrary. *See Oboler v. Goldin,* 714 F.2d 211, 212 (2 Cir.1983). Sparkle attempts to meet this burden with various lines of argument, all stemming from the fact that the toys were initially sold by Takara without copyright notice. We hold that the efforts fail on the facts of this case, although we reject some of the arguments made by Hasbro in seeking to counter them.

■ Sparkle's most basic position is that sale of the unmarked toys by Takara in Japan injected the designs into the public domain. If the designs were truly in the public domain, Hasbro could have enjoyed no copyrights in the toys, and Sparkle's copying would have been permissible. *See Sears Roebuck & Co. v. Stiffel Co.,* 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964); *Compco Corp. v. Day-Brite Lighting, Inc.,* 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964). Sparkle's argument, however, ignores the scheme for the protection of copyrightable works set up by the Act and the U.C.C. If the toys, though not initially qualifying for copyright protection, subsequently did, Sparkle's position loses its glow.

There is no dispute that the toys here at issue were originally designed by Takara in June 1983. Although the toys enjoyed no copyright protection under Japanese law,[3] they fell within the class of "pictorial, graphic, and sculptural works" covered by § 102(a)(5) of the Act. *See* § 101. Since the toys were authored by a Japanese national and first "published" (i.e. sold) in Japan, they enjoyed copyright protection under United States law from the moment they were created, *see* § 302(a), by virtue

---

**2.** Registration satisfies § 411(a), one of the statutory prerequisites for enforcement of Hasbro's copyrights in the United States. The second prerequisite—recordation of the assignment from Takara with the Copyright Office, § 205(d) —was not alleged in Hasbro's complaint and is not evident in the record. Hasbro's counsel stated during oral argument, however, that recordation has taken place; Judge Weinfeld's opinion in *Wales Indus. Inc. v. Hasbro Bradley, Inc.,*

612 F.Supp. 510, 514 (S.D.N.Y.1985), so states; and defendant does not dispute this.

**3.** *See* 4 Z. Kitagawa, *Doing Business in Japan* § 8.02[5][c] (1985) ("[M]odels devised for the purpose of mass-producing practical goods are subject to the Design Act rather than the Copyright Act.").

of both § 104(b) of the Act and Article II(1) of the U.C.C.[4]

As previously stated, there is also no dispute that before the assignment of Takara's copyrights to Hasbro approximately 213,000 of the toys were sold, mostly in Japan, without copyright notice. This omission of notice from toys sold by Takara or with its authority outside the United States violated § 401(a) of the Act, which requires:

> Whenever a work protected under this title is published in the United States *or elsewhere* by authority of the copyright owner, a notice of copyright as provided by this section shall be placed on all publicly distributed copies from which the work can be visually perceived, either directly or with the aid of a machine or device.

(Emphasis added.) *See* 2 *Nimmer, supra,* § 7.12[D][1].

This does not mean, however, that the Takara designs were immediately thrust into the public domain. The Act explicitly provides in § 405(a) that the omission of notice from copies of a protected work may be excused or cured under certain circumstances, in which case the copyright is valid from the moment the work was created, just as if no omission had occurred.[5] The House Report accompanying the Act stated with respect to § 405(a) that "[u]nder the general scheme of the bill, statutory copyright protection is secured automatically when a work is created, and is not lost when the work is published, even if the copyright notice is omitted entirely." H.Rep. No. 1476, 94th Cong., 2d Sess. 147 [hereafter *House Report*], *reprinted in* 1976 U.S.Code Cong. & Ad.News 5659, 5763. In the opinion of the committee that authored the report, the excuse and cure provisions of § 405(a) represented "a major change in the theoretical framework of American copyright law." *Id.* at 146, *reprinted in* 1976 U.S.Code Cong. & Ad. News at 5762.[6]

It is not contended that the omission of notice from the toys could have been excused under either subsections (1) or (3) of § 405(a); rather, reliance is placed on subsection (2). In effect, § 405(a)(2) allows a

---

**4.** Section 104(b) of the Act reads, in pertinent part:

> The works specified by sections 102 and 103, when published, are subject to protection under this title if—
> (1) on the date of first publication, one or more of the authors is a national or domiciliary of the United States, or is a national, domiciliary, or sovereign authority of a foreign nation that is a party to a copyright treaty to which the United States is also a party ...; or
> (2) the work is first published in the United States or in a foreign nation that, on the date of first publication, is a party to the Universal Copyright Convention; ....

Article II(1) of the U.C.C. reads:

> Published works of nationals of any Contracting State and works first published in that State shall enjoy in each other Contracting State the same protection as that other State accords to works of its nationals first published in its own territory, as well as the protection specially granted by this Convention.

**5.** Section 405(a) provides:

> The omission of the copyright notice prescribed by sections 401 through 403 from copies or phonorecords publicly distributed by authority of the copyright owner does not invalidate the copyright in a work if—

> (1) the notice has been omitted from no more than a relatively small number of copies or phonorecords distributed to the public; or
> (2) registration for the work has been made before or is made within five years after the publication without notice, and a reasonable effort is made to add notice to all copies or phonorecords that are distributed to the public in the United States after the omission has been discovered; or
> (3) the notice has been omitted in violation of an express requirement in writing that, as a condition of the copyright owner's authorization of the public distribution of copies or phonorecords, they bear the prescribed notice.

**6.** Section 21 of the Copyright Act of 1909, Pub.L. No. 60–349, 35 Stat. 1075 (codified as amended at 17 U.S.C. (1976)), had relieved against failure to affix the notice of copyright required by § 10 only where the copyright proprietor had sought to comply with the notice provisions and the omission from a particular copy or copies was by accident or a mistake. Even in such cases damages could not be recovered against an innocent infringer who had been misled by the omission of the notice.

person who publishes a copyrightable work without notice to hold a kind of incipient copyright in the work for five years thereafter: if the omission is cured in that time through registration and the exercise of "a reasonable effort ... to add notice to all copies ... that are distributed to the public in the United States after the omission has been discovered," the copyright is perfected and valid retroactively for the entire period after cure; if the omission is not cured in that time, the incipient copyright never achieves enforceability. The *quid pro quo* in the Act for persons who have been misled by the omission of copyright notice before the cure is the more liberal provision of § 405(b), as compared with § 21 of the 1909 Act, regarding innocent infringers, of which more hereafter.

There is no dispute that Takara had not cured the omission of notice from the toys under § 405(a)(2) before assigning to Hasbro in June 1984 "the entire right, title and interest to any copyrights on the DESIGNS for the United States of America." Takara's copyrights thus were merely incipient—though subject to cure—at the time of the assignment. It is axiomatic that an assignee of a copyright can take no more than his assignor has to give. *See Bong v. Alfred S. Campbell Art Co.*, 214 U.S. 236, 245–47, 29 S.Ct. 628, 629–30, 53 L.Ed. 979 (1909) (if a foreign author is ineligible to claim copyright under United States law, his assignee may claim no greater rights, even if the assignee would otherwise be eligible to claim copyright in the United States were he the author); *see also* 1

*Nimmer, supra,* § 5.05[C], at 5–46 ("[N]othing in the language of the ... [1976] Act suggests a result contrary to that in *Bong*.").

█ In view of this, we reject Hasbro's argument that the omission of notice by Takara is irrelevant in assessing the validity of Hasbro's copyrights. Hasbro relies on the language of § 401(a), *see supra,* pointing out that this requires notice only with respect to works published "by authority of the copyright owner." According to Hasbro, since it—not Takara—is the copyright owner in the United States, and since all of the toys sold by its authority in the United States and elsewhere have displayed proper copyright notice, it cannot be in violation of the notice requirement. The fallacy with this argument is that it starts by assuming the very point here in dispute: that Hasbro is the owner of valid copyrights in the United States. Our discussion of *Bong* shows that Hasbro's copyrights initially had only such validity as Takara's. For purposes of determining the validity in the United States of Takara's copyrights at the time of assignment, Takara is the relevant "copyright owner" under § 401(a). As shown above, Takara's violation of the notice requirement left Hasbro with only an incipient copyright, subject to cure.[7]

The issue thus becomes whether Hasbro has cured Takara's omission of notice under § 405(a)(2). There is no question that Hasbro, as Takara's assignee, is permitted to effect cure through its own efforts. The

---

**7.** To such extent as language in the three cases cited by Hasbro, *Wales Indus., Inc. v. Hasbro Bradley, Inc.*, 612 F.Supp. 510 (S.D.N.Y.1985), *Nintendo of America, Inc. v. Elcon Indus., Inc.*, 564 F.Supp. 937 (E.D.Mich.1982), and *Midway Mfg. Co. v. Artic Int'l, Inc.*, 547 F.Supp. 999 (N.D.Ill.1982), *aff'd*, 704 F.2d 1009 (7 Cir.), *cert. denied*, 464 U.S. 823, 104 S.Ct. 90, 78 L.Ed.2d 98 (1983), may imply otherwise, we must respectfully disagree, although the results in the latter two cases may well be correct. The opinion of the Court of Appeals in *Midway*, as distinguished from that of the district court, 547 F.Supp. at 1008, can be read as resting on the basis that the plaintiff had effected a cure rather than on the theory that none was necessary. *See* 704 F.2d at 1013. *Nintendo* is inapposite on

both its facts and its legal analysis, since there the publication without notice (by a licensee of the assignor), which took place in both Japan and the United States, occurred *after* assignment of the American copyright to the plaintiff, *see* 564 F.Supp. at 940, and was in violation of the licensing agreement, *id.* at 944. As Professor Nimmer points out, "in view of the non-extraterritoriality of copyrights ... [the assignor's] copyright for Japan [was] entirely separate from [Nintendo's] copyright for the United States. Therefore, once [the assignor] assigned the U.S. copyright, [its] acts or omissions vis-a-vis notice could not affect the validity of [Nintendo's] copyright." 3 *Nimmer, supra,* § 10.-02[C][2], at 10–31 n. 55.1.

"copyright claimant" entitled under the Act to register a copyright in the United States may be either the author of the work or his assignee, and any registration is of the work *per se* and redounds to the benefit of the assignor as well as the assignee. 3 *Nimmer,* supra, § 10.02[C][2], at 10–33. Not disputing this, Sparkle argues that Hasbro cannot effect cure under § 405(a)(2) because Takara's omission of notice was deliberate.

■ On its face, § 405(a)(2) is not restricted to unintentional omissions. Its language permits cure if registration is made "within five years after *the publication without notice*"—not, as Sparkle would read it, "the [unintentional] publication without notice." The difference between the broad language of § 405(a) and the more limited language of § 21 of the 1909 Act, *see supra* note 6, shows that Congress no longer wished to deal only with omissions of notice due to accident or mistake. Moreover, the legislative history of the 1976 Act affords ample demonstration that Congress intended to bring deliberate omissions within the ambit of § 405(a)(2). The House Report comments with respect to § 405(a) that "[u]nder the proposed law a work published without any copyright notice will still be subject to statutory protection for at least 5 years, whether the omission was partial or total, *unintentional or deliberate.*" *House Report, supra,* at 147 (emphasis added), *reprinted in* 1976 U.S. Code Cong. & Ad.News at 5763. Professor Nimmer adds:

> In explaining the same statutory text [§ 405], the Register of Copyrights stated: "... it was urged that, to make the validity of a copyright turn on the question of whether the omission of notice

was 'deliberate' or 'unintentional' would involve impossible problems of proof and would result in uncertainty and injustice. After considering these arguments we concluded that questions involving the subjective state of mind of one or more persons and their ignorance or knowledge of the law should be avoided if at all possible ... we decided that the bill should drop any distinction between 'deliberate' and 'inadvertent' or 'unintentional' omission and, subject to certain conditions, should preserve the copyright in all cases." Reg.Supp.Rep., p. 105.

2 *Nimmer, supra,* § 7.13[B][3], at 7–96 n. 43.[8]

Against this, Sparkle relies on Judge Sand's opinion in *Beacon Looms, Inc. v. S. Lichtenberg & Co.,* 552 F.Supp. 1305 (S.D. N.Y.1982), and on Professor Nimmer's approval of the reasoning of that opinion, *see* 2 *Nimmer, supra,* § 7.13[B][3].

The result in *Beacon Looms* depended almost entirely on the language in § 405(a)(2) that reasonable efforts to affix notice need begin only "after the omission has been discovered." Judge Sand reasoned that since "one cannot 'discover' an omission that has been deliberate," 552 F.Supp. at 1310, to permit the cure of deliberate omissions would do violence to the unambiguous "plain meaning" of the statute. *See contra O'Neill Developments, Inc. v. Galen Kilburn, Inc.,* 524 F.Supp. 710 (N.D.Ga.1981) (deliberate omissions curable under § 405(a)(2); reasonable efforts requirement applies to "copies published after 'discovery' of the fact that the existence of a copyright has become an issue."). In view of this supposedly plain meaning, Judge Sand felt compelled to ignore the legislative history outlined above.[9]

---

**8.** The Register of Copyrights played a key role in developing the 1976 Act. *See House Report, supra,* at 47–49, *reprinted in* 1976 U.S.Code Cong. & Ad.News at 5660–62; *see also* 1 *Nimmer, supra,* at vi ("[T]he Register of Copyrights, more than any other single person, is responsible for the content of the [1976 Act].").

**9.** In a later section of the opinion, 552 F.Supp. at 1312–13, dealing with the kind of conduct that qualifies as "unintentional" under

§ 405(a)(2), Judge Sand cites to § 21 of the 1909 Act and to an early version of § 405, both of which were restricted to cases in which the omission of notice resulted from accident or mistake. However, these citations cut against his earlier analysis. The change from § 21 of the 1909 Act strengthens the conclusion that Congress meant to embrace intentional omissions in § 405(a) of the 1976 Act. Moreover, both references show that when Congress want-

With due respect, we cannot agree with *Beacon Looms.* The operative language of the statute in this context comes at the beginning of § 405(a), covers all three methods of cure, and is not restricted in any way. The language relied on by Judge Sand, which comes at the end of § 405(a)(2), is relevant only with respect to unmarked copies that have been publicly distributed in the United States. More important, the premise of the argument— namely, that a deliberate omission cannot be "discovered"—is unsound. As discussed above, an assignee or licensee may effect cure under § 405(a)(2) on behalf of itself and its assignor or licensor. In such a situation—the very one presented in this case—no violence is done to the statutory language by saying that the omission, though deliberate on the part of the assignor or licensor, was "discovered" by the person later attempting to cure it. Similarly, a deliberate omission at a lower level of a corporate hierarchy might well be "discovered," in realistic terms, by someone at a higher level. Instances like these at least indicate that the "discovered" language does not reveal a plain intent to exclude all deliberate omissions.

The meaning that § 405(a)(2) does not apply to intentional omissions thus seems to us anything but "plain." At most, the "discovered" language introduces an ambiguity. It thus becomes appropriate to look at the legislative history, and this demonstrates that intentional as well as unintentional omissions were intended to be made curable.[10] While there may be some difficulties in determining what constitutes "a reasonable effort to add notice to all copies ... that are distributed to the public in the United States after the omission has been discovered" in cases where the omission was intentional and the person attempting to cure is the same person who omitted notice, as argued in *Beacon Looms,* 552 F.Supp. at 1310–11, and 2 *Nimmer, supra,* § 7.13B3, at 7–96, these difficulties are by no means insuperable and constitute no sufficient reason for disregarding the declared legislative intent. We therefore conclude that the omission of notice from the toys, even if deliberate on Takara's part, was subject to cure under § 405(a)(2),[11] and we pass on to the question whether Hasbro in fact effectuated cure.

■ Apart from Sparkle's contention that Hasbro committed fraud on the Copyright Office, *see infra,* there is no dispute that Hasbro validly registered its copyrights in the Takara designs within five years of publication of the unmarked toys, thus satisfying one of the two requirements for cure under § 405(a)(2). Sparkle

---

ed to exclude intentional omissions it was perfectly capable of doing so in plain and appropriate language.

**10.** The facts of the present case nicely illustrate the wisdom of the recommendations of the Register of Copyrights quoted by Professor Nimmer and set out *supra* in the text. While Sparkle may well be right in asserting that Takara's omission was "intentional" and "deliberate" in the sense that it was not inadvertent, Hasbro counters that it was a reasonable decision in view of the uncopyrightability of toy products under Japanese law, *see supra* note 3, and Takara's lack of intention at that time to sell the toys in the United States. Determination of such questions of fact and law was just what Congress wanted to avoid by drafting § 405(a) as broadly as it did.

**11.** Professor Nimmer concludes his discussion of § 405(a)(2) by conceding that

if *O'Neill* is not followed, it would seem, then, that the above stated legislative intent [to permit the cure of deliberate omissions] can be

given only the effect of excusing deliberate omissions of notice from a "relatively small number of copies or phonorecords," and the effect of excusing deliberate omissions of notice from all copies and phonorecords published outside of the United States provided the registration requirement is observed. This latter effect is not without significance in that it largely undercuts the statutory requirement of Sections 401(a) and 402(a) requiring placement of notice upon copies and phonorecords published outside of the United States. As to publications occurring within the United States "the impossible problems of proof" relating to subjective intent, that the Register sought to avoid, would appear to remain under the current Act.

2 *Nimmer, supra,* § 7.13[B][3], at 7–98 (footnotes omitted). Such consequences would seem to be excellent reasons for rejecting *Beacon Looms.*

admits also that Hasbro has affixed notice to all of the toys since sold under its authority in the United States and elsewhere. It argues, however, that Hasbro did not make "a reasonable effort" to affix notice to toys from the unmarked batch initially produced by Takara and thus failed to satisfy the second requirement of § 405(a)(2). Hasbro asserts that this was unnecessary: that its obligations under § 405(a)(2) are limited to unmarked toys distributed to the public in the United States by its own authority as the "copyright owner" and, insofar as we have previously concluded that this phrase includes Takara, to unmarked toys so distributed by Takara before the assignment.

We are not prepared to endorse this. The introductory words to § 405(a) indeed speak of copies "publicly distributed by authority of the copyright owner." However, as we have held above, the sales of unmarked toys by Takara in Japan before the assignment of the copyright fall within this phrase. In the absence of any prohibition on resale of these toys in the United States, the purchasers were free to sell them here. To be sure, the requirement of § 405(a)(2) to add notice is limited to copies "that are distributed to the public in the United States," but it seems significant that Congress did not here repeat the words "by authority of the copyright owner."

We are content, however, to leave undecided the question whether Hasbro would be obligated under § 405(a)(2) to make a reasonable effort to affix notice even with respect to unmarked toys *distributed in the* United States by persons other than itself or Takara. At this juncture, Sparkle has yet to produce credible evidence that any of the unmarked toys have been publicly distributed in the United States *at all,* let alone evidence of who distributed them. Whether any unmarked toys were introduced into the United States and, if so, who introduced them and what efforts to mark them would

be reasonable are questions that can be resolved at trial when Hasbro seeks a permanent injunction.

Sparkle further alleges that Hasbro failed to advise the Copyright Office of the prior sales of the unmarked toys by Takara when applying for registration and argues that this constituted fraud on the Copyright Office, thereby invalidating Hasbro's copyrights. But Sparkle did not respond in brief or at argument to Hasbro's contention, which is supported by the record, that the Copyright Office was informed of the sales of the unmarked toys when registration was made. Sparkle likewise has not shown that Hasbro was even obligated under the Act to give the Copyright Office this information. The legislative history of § 405(a) suggests that no such obligation exists: "[S]ince the reasons for the omission have no bearing on the validity of copyright [under § 405(a)(2) ], there would be no need for the [registration] application to refer to them." *House Report, supra,* at 147, *reprinted in* 1976 U.S.Code Cong. & Ad.News at 5763. Finally, this point was not raised in the district court, and we see no reason to permit Sparkle to raise it here for the first time.

Turning finally to Sparkle's claim that it should have been recognized as an innocent infringer under § 405(b), we think the record did not contain sufficient information for the district judge to have decided this issue,[12] and he properly declined to do so. However, it should be promptly dealt with, either on an application by Hasbro for a permanent injunction or on one by Sparkle for a declaration of its rights.

Affirmed.

---

12. One point which may be important is what protection, if any, Sparkle should receive if it had ordered its toys but not placed them on the market when it received actual notice of Hasbro's registration of the copyrights.