**IMPERIAL TOY CORPORATION, Plaintiff,**

v.

**GOFFA INTERNATIONAL CORPORATION, Defendant.**

**No. 97 CV 7072.**

United States District Court, E.D. New York.

Dec. 18, 1997.

618

Richards & O'Neil, LLP, Barry I. Slotnick, Jacques M. Rimokh, of counsel, New York City, Banner & Witcoff, Ltd., Charles W. Shifley, Marc S. Cooperman, Ronald C. Gorshe, Jr., of counsel, Chicago, IL, for Plaintiff.

Edward S. Hochman, New York City, for Defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiff Imperial Toy Corporation (Imperial) brought this suit against defendant Goffa International Corporation (Goffa) claiming that Goffa has infringed its copyrights in ten plush animal toys in violation of 17 U.S.C. § 501 et seq. Plaintiff has moved for a preliminary injunction.

## I

The moving papers show the following. Imperial is a designer and manufacturer of children's toys. In the spring of 1996 it began selling a line of plush stuffed animals called Friendly Pebble Pets, small toy animals with beanbag bodies covered in soft fabric. The line features a variety of animals, of which only the whale, penguin, turtle, lion, dolphin, toucan, lobster, frog, dachshund and goldfish are at issue in this case. These toys have enjoyed significant commercial success both nationally and in the New York area, and are sold at retail outlets such as Wal–Mart and K–Mart, and toy stores such as Kay–Bee Toys.

In July 1997 Imperial obtained a Goffa catalog sales sheet indicating that Goffa was marketing a line of plush toys called Bean Bag Friends. Imperial thereafter purchased the Goffa toys, and determined that they are similar in appearance to Friendly Pebble Pets.

Imperial mailed copyright applications for the ten Friendly Pebble Pets that are the subjects of this case on August 14, 1997. Nine of the ten toys were issued certificates of registration on October 31, 1997, and the tenth was registered on November 4, 1997.

Imperial filed suit in the Southern District of New York on November 4, 1997. The suit was voluntarily dismissed by Imperial because of improper venue, and was refiled in this Court on December 2, 1997. Imperial moved for a preliminary injunction on December 4, 1997.

## II

To obtain a preliminary injunction, Imperial must demonstrate:

(1) either a likelihood that [it] will succeed on the merits of [its] claim, or that the merits present serious questions for litigation and the balance of hardships tips decidedly toward the plaintiff; and (2) that without the injunction, [it] will likely suffer irreparable harm before the court can rule upon [its] claim.

*Fisher–Price, Inc. v. Well–Made Toy Mfg. Corp.*, 25 F.3d 119, 122 (2d Cir.1994).

### A. Likelihood of Success

■ A plaintiff proves infringement by showing that: (1) he owns a valid copyright in the work; and (2) the defendant has copied protected elements of the plaintiff's work. *Fonar Corp. v. Domenick*, 105 F.3d 99, 103 (2d Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 265, 139 L.Ed.2d 191 (1997).

#### 1. Validity of the Copyright

■ A certificate of copyright registration is prima facie evidence that the copyright is valid. 17 U.S.C. § 410(c); *Fonar Corp.*, 105 F.3d at 104. Imperial's registration of the ten Friendly Pebble Pets shifts to Goffa the burden of proving that the copyrights are invalid. *Fonar Corp.*, 105 F.3d at 104. The presumption of validity may be rebutted "[w]here other evidence in the record casts doubt on the question." *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir.1980). For example, proof that a work has been copied from a public domain source can rebut the presumption that a copyright of that work is valid. *See, e.g., Folio Impressions, Inc. v. Byer California*, 937 F.2d 759, 763 (2d Cir.1991).

■ Goffa argues that Imperial does not hold a valid copyright on Friendly Pebble Pets. It accuses Imperial of registering

products which it did not create, but it admits that it does not know who did create the designs. Instead, Goffa has offered three different theories about who other than Imperial might have designed these toys.

First, Goffa speculates that the designs at issue have been in existence for decades, implying that the toys fall within the public domain and cannot be copyrighted. But Goffa has not offered any toy actually existing in the public domain which Imperial may have copied. Mere conjecture is not sufficient to rebut the presumption of the validity of Imperial's copyright.

Goffa also alleges that Imperial has copied the Beanie Babies line of toys produced by Ty, Incorporated (Ty), which have been on the market since 1994. But Ty's Beanie Babies submitted to the Court on the hearing of the motion look quite different from Imperial's Friendly Pebble Pets and Goffa's Bean Bag Friends, which, as discussed hereafter, are for the most part virtually identical. For example, Ty's goldfish is an orange toy with black bead eyes and a puckered mouth. Imperial's version has a yellow body and a pinkish-red tail, face, and fins. Its eyes are larger than Ty's, are black and white, and bulge out of its head. It also has two yellow balls where its mouth would ordinarily be.

Goffa's version of the goldfish is identical to that of Imperial, down to the two strange yellow balls. The only difference is that the tail, face, and fins are a darker red than Imperial's toy. Because the Ty toy and the Imperial design are so easily distinguishable, the status of Ty's copyright has nothing to do with this case. Goffa's argument that Imperial has copied Ty is simply fatuous.

Imperial has offered an affidavit attesting that Friendly Pebble Pets were created by a Chinese entity called Shanghai Elcee, which assigned the rights to the toys to Imperial. The affidavits of Goffa's sales representatives respond that they do not believe that Shanghai Elcee—or any other Chinese factory, for that matter—had any role in originating the toys. But Goffa does not offer any evidence of who did design the toys, nor does it claim to have designed its own version of the toy.

The opinions of the Goffa sales representatives are not based on any first-hand knowledge, and consequently carry little (if any) weight. Imperial's evidence that it owns Shanghai Elcee's copyright is more credible than the unsubstantiated theory proffered by Goffa.

█ Goffa also seems to argue that because Shanghai Elcee is a Chinese entity, it cannot hold a copyright. This assertion is insupportable in the face of the United States copyright law, which gives copyright protection to all "original works of authorship fixed in any tangible medium of expression," with no reference to the nationality of the author of the work. 17 U.S.C. § 102(a); *see also Hasbro Bradley, Inc. v. Sparkle Toys, Inc.,* 780 F.2d 189, 192 (2d Cir.1985) (holding that toys created in Japan are protected by the United State's copyright law even though they would not enjoy copyright protection under Japanese law).

Goffa's arguments are unconvincing and do not rebut the presumption of the validity of Imperial's copyright.

### 2. *Copying of Protected Elements*

█ To show copying in violation of the copyright law, Imperial must demonstrate that Goffa actually copied Imperial's work, and that elements of the copy are "substantially similar" to protected elements of the plaintiff's work. *Fisher–Price, Inc.,* 25 F.3d at 122–123.

█ A plaintiff can prove copying by showing that a defendant had access to its work, and that the works are similar enough to indicate that one copied the other. *Id.* Imperial has submitted evidence that the marketing of its Friendly Pebble Pets is sufficiently extensive to establish that Goffa had access to the toy. *See Conan Properties, Inc. v. Mattel, Inc.,* 712 F.Supp. 353, 360 (S.D.N.Y.1989) ("Access may be inferred ... if the plaintiff's work has been widely disseminated."). Moreover, access is also presumed when the two works are "strikingly similar." *Arnstein v. Porter,* 154 F.2d 464 (2d Cir.1946). As discussed hereafter, Imperial's and Goffa's toys are in most respects

practically identical. The only fair inference is that Goffa engaged in copying.

 Once copying has been established, the court must determine whether there exists "a substantial similarity between protectible elements of the two works." *Fisher–Price, Inc.*, 25 F.3d at 123. The similarity between the toys must be measured by "whether an ordinary observer would overlook the dissimilarities between the artistic (protectible) aspects of the two works and would conclude that one was copied from the other." *Id.*

 Comparing only the protectible elements of these toys, it is clear that all but one of Goffa's creations are substantially similar to the Friendly Pebble Pets. In fact, most of Goffa's toys do not vary one whit from Imperial's design. The toys do not merely share features characteristic of the animals that they represent; they contain identical, and in some instances bizarre, interpretations of those features.

### a. The Whale

Imperial's whale is black with a white underbelly and white spots beside each eye. It has a thin red mouth. Its chin is level with its torso as if it is swimming straight ahead, but its eyes—which have white half-moons above a black iris with a white pupil—gaze downward. Goffa's whale contains these identical characteristics and no significantly different characteristics.

While the conventional black body, white underbelly, and whale-shaped tail presumably are characteristic of most whale dolls, the white spots beside the eye, red lips, position of the chin, and detailed eyeballs are protectible artistic expressions of a whale. A copy of Ty's Beanie Baby whale, submitted by Imperial on the motion, has none of these features but has black button eyes with no white part in them, a head that is angled downward, no white spots, and no lips at all.

### b. The Penguin

Imperial's penguin has the following protectible characteristics: black button eyes; white patches around the eyes; feet shaped like half-moons that are sewed to the front seam of the body and are not stuffed with beanbag filler; a fat, blunt beak; and wings that curve toward its stomach.

The only difference between the Imperial and Goffa penguins is that Goffa's doll's feet are red, while those of Imperial's doll are orange. This variation is so minimal that it is easy to miss at first glance. Ty's penguin possesses none of the above-described characteristics except for button eyes.

### c. The Turtle

 The two turtles present a more difficult question. They are similar in general contour, but the Goffa turtle has features not present in Imperial's turtle. Imperial's turtle is purple and yellow with half-moon feet that are unstuffed, a shell composed of twelve small trapezoids and one large hexagon, and only a suggestion of a mouth. Goffa's turtle is grey and beige, and has differently-shaped feet stuffed with beanbag filler. Its shell is outlined with a beige rim, and is composed of one hexagon and six trapezoids. The hexagon and trapezoids are of similar size. Goffa's turtle is slightly larger than Imperial's turtle, and has a thin, black smile on its face. The features which the turtle have in common—bald heads, small tails, shell-shaped bodies—are generic characteristics which would be common to any toy recognizable as a turtle. The Goffa turtle does not infringe the copyright on the Imperial turtle.

### d. The Lion

Goffa's and Imperial's lions have an identical body shape, including slightly curved thighs and blunted forepaws. Both share the following features. Their tails are unstuffed, and are tipped with a tiny bit of the same kind of fur that comprises their manes. The insides of their ears are white, but the outsides are the light tan color of the rest of their bodies. Their eyes and noses have the same dark plastic, and their mouths are an upside-down Y-shape stitched in black thread.

The Goffa toy has a marginally smaller muzzle than the Imperial toy, and is slightly less well-stuffed. But these variations are so minimal that it is difficult to tell if they are

caused by an alteration in the design, or are merely accidental variations that could occur among any mass-produced line of objects.

#### e. *The Dolphin*

Imperial's dolphin has a blue body with yellow patches around the eyes and a grey underbelly. Its chin thrusts forward as if it is staring straight ahead, and its muzzle is quite pronounced. Its tail looks more like that of a whale than a dolphin. Goffa's dolphin is identical in every way, except that the shade of blue of its body is slightly lighter than Imperial's dolphin.

Ty's dolphin shows that these artistic features are not necessary to the idea of a dolphin. Ty's dolphin contains none of the characteristics described here. Its body is an entirely different shape. In fact, it looks like a different kind of animal.

#### f. *The Toucan*

The toucans produced by both Imperial and Goffa are identical. Each has a black body, an orange chest, red patches around the eyes and red feet. The beak is composed of four orange fabric pieces, and is tipped in black. The tail looks as if it belonged to a beaver. The red crest is made of a single piece of felt cut in a wavy pattern. The waves of Imperial's crest are more pronounced that Goffa's, but in all other respects the toys are the same.

#### g. *The Lobster*

Imperial's lobster is bright orange, rather than the traditional red that one would expect a lobster to be. It has three red ribbons encircling its body. Its claws are larger than its six small legs, none of which are stuffed with beanbag filler. It has two black whiskers, one on each side of where its mouth should be.

Goffa's toy copies these features, including the fanciful orange color. The only difference between the brands is that Goffa's whiskers are comprised of two strands of black thread each instead of one, and the legs are slightly fatter. Otherwise, the lobsters are identical.

#### h. *The Frog*

Both frog dolls share the following characteristics: a green upper body, a white underbelly, a red smile with upturned corners, eyes that rise in peaks out of the head, and hands and feet with three points on them. Like all of the other toys at issue, with the exception of the turtle, the frogs seem clearly cut from the same pattern as the location of the seams on the bodies of the dolls indicates.

#### i. *The Dachshund*

Imperial's dachshund looks nothing like a real dachshund, because the body is not elongated and the feet are oversized. It has a wide-eyed stare, a black button nose, a little red tongue, and a knot tied in the end of its tail. Goffa's dog has the identical body shape, tongue, and knot in the tail. It is a slightly browner shade, and the eyes have white pupils that Imperial's dog lacks, but it is clearly cut from the same pattern as that of Imperial.

#### j. *The Goldfish*

Imperial's goldfish, already described above, has a yellow body and a pinkish-red tail, face, and fins. Its eyes bulge out of its head. It also has two yellow balls for a mouth, making the fish look diseased. Goffa's version is identical, down to the two strange yellow balls, but the tail, face, and fins are a darker red than Imperial's toy.

#### k. *Summary*

Because Goffa's toys employ the identical expressive elements and artistic touches of Imperial's whale, penguin, lion, dolphin, toucan, lobster, frog, dachshund and goldfish, a substantial similarity exists between Goffa's and Imperial's versions of these nine toys. The differences between these toys are so minor that most border on the invisible and are only apparent on very close inspection.

The two turtles have sufficient differences that the court cannot infer that Goffa copied from Imperial.

## B. *Irreparable Harm*

To merit a preliminary injunction, Imperial also must show that it will suffer irreparable harm in the time before the court can rule on the merits of its claim. Irreparable harm is presumed once a prima facie showing of infringement has been made, unless the copyright holder unreasonably delays prosecuting his infringement claim. *Fisher–Price, Inc.*, 25 F.3d at 124. Imperial brought this suit within four months of learning of the existence of Goffa's toys. A four month delay, during which Imperial investigated the claim and registered its toys, is not unreasonable. *See id.* at 124 (finding that a six month delay was not unreasonable).

### III

Goffa is preliminarily enjoined from importing, manufacturing, distributing, advertising, or selling its whale, penguin, lion, dolphin, toucan, lobster, frog, dachshund and goldfish toys. Imperial's request for an injunction against the manufacture and sale of Goffa's toy turtle is denied.

So ordered.